Our first case for argument today is 22-1271. Please say the name of your client, counsel. I don't know how to pronounce it. His name is Mark Besanceney, and good morning, Your Honor. Hi. Okay, so the first case is Besanceney v. DHS. Mr. Harrington, please proceed. Good morning, Your Honors. John Harrington for appellant Mark Besanceney. May it please the Court that I present Mr. Besanceney, a special investigator for the TSA, engaged in protected activity under the WPEA. Mr. Besanceney, a seasoned investigator with 40 years of law enforcement experience, was leading an investigation of baggage thefts at LaGuardia Airport, and his supervisors, Tom Williams and Jeff Facey, pressured him to obtain search warrants of the council. We know the facts, but the board found there were no protected disclosures. There were either policy disagreements, which aren't evidence of illegal or improper activity, or simply a failure proof of the number of items that were alleged. Well, we certainly believe that the board erred in coming to those conclusions, particularly with regard to the issue of whether a search warrant was justifiable under the circumstances in the investigation. Mr. Besanceney objected. Wasn't, isn't the question not for whether a search warrant was warranted, but to collect the evidence and then present it to somebody, I think in the Attorney General's office, I think, who would then determine whether a warrant was appropriate. That is the position put forward by TSA, but that's not what happened. Mr. Besanceney clearly told his supervisors that there was insufficient evidence to obtain a search warrant. Is Mr. Besanceney a lawyer? He is not, Your Honor. So he's not a lawyer. So his supervisors told him to consult a lawyer about whether we could obtain a search warrant. How did they pressure him to obtain a search warrant? He can't obtain a search warrant. He's not a lawyer. He can't go before a judge and get a search warrant, right? They told him to proffer information that a search warrant, that there was probable cause for a search warrant. I think they told him to review the footage and then take his results to the AUSA and see if a search warrant could be obtained. Respectfully, Your Honor, I understand that's what TSA has argued here. That's not what happened. Mr. Besanceney had reviewed the evidence. Who cares whether Mr. Besanceney had reviewed the evidence? It's not his job for him to assess whether there's probable cause. It's the AUSA's job. So what his supervisors were asking him to do is collect the evidence and present it to the attorney who would make the decision about whether there's probable cause. That is what TSA has argued after the fact, Your Honor. That's not what the facts were as found by the Merit Systems Protection Board. And those aren't challenged. I don't see you challenging, you know, the basic facts as reiterated by Chief Judge Moore today. Those seem to be the facts that the board found when I read their opinion. That's what the board indicates as the fact findings, is what occurred. So I think we have to accept those. I disagree, Your Honor. I believe that the judge made errors of law and of fact. Okay, but you haven't challenged the basic facts we're talking about right now, which are that Mr. Besanceney was asked to look at video footage for the purposes of collecting evidence to talk to the AUSA about a search warrant, right? That is a piece of the factual record. It is not the record. That's fine, but it is facts that you haven't challenged, right? I know there's other facts. I just want to make sure that you've identified certain issues on appeal. You're not allowed to raise new ones here before us. And if we can't even get through the basic facts, that's going to be problematic. I understand, Your Honor. And I think the basic fact at issue here is whether there was probable cause based on the evidence before Mr. Besanceney that would justify a search warrant of these two suspects' homes. And he argued with his supervisors that there was not. I know, but how does, why is that then not there? I think the issue actually isn't quite that, but the issue is whether there was a disclosure satisfying 2302A2D, which would mean not a communication concerning policy decisions, or something that reasonably is believed to be gross mismanagement. And this was a disagreement about whether there was or was not probable cause that involved a legal standard established by the U.S. Constitution. And Mr. Besanceney was objecting that there was no policy disagreement. And certainly the jurisprudence is clear that the two things are not mutually exclusive. So the question, what is the standard of review we apply to the board's decision that that was a policy disagreement? Well, I think in terms of, the judge made several different errors here. I mean, first, she made a legal error in determining that Mr. Besanceney had not specifically identified a particular law, rule, or regulation, which he's not required to do. And I think the standard of review there should be the standard that applies to legal error in a situation like that. And I think she also made... What about the factual question of whether it was a policy decision? The standard of review, whether she made an error in analyzing and considering those facts. And the standard of review, substantial evidence. We look to see whether there's substantial evidence to support that fact finding, right? Yes, Your Honor. Okay. And Mr. Besanceney, we argue, and the record presented at the hearing establishes it, that he made these protective disclosures numerous times to his supervisors in various meetings. And the board also erred in not analyzing or even considering the evidence of a causal link between what we call prohibited personal practices. And there was... What was the protected disclosure regarding this issue? The protected disclosure was that he was objecting that he was being asked to violate the legal standard established by the U.S. Constitution in asserting that there was probable cause... They didn't ask him to assert there was probable cause. There's no evidence in this record they asked him to assert there was probable cause. Not even his testimony says that. They told him to get search warrants for these suspects' homes. He told them the evidence did not justify that. And... I'm sorry, did or did it not? Were his supervisors... He was told to review the surveillance footage, catalog his findings, so the AUSA could assess whether the evidence supported a search warrant. That was part of what happened after Mr. Besanceney objected to being searched. Mr. Besanceney initially was told to get search warrants. Okay, well maybe he was initially told to get search warrants, but then his supervisors backed down from that and said, okay, instead, even if what you're saying is true, they said review the footage and take it to the AUSA. That was after Mr. Besanceney engaged in protected activity by objecting to getting search warrants. And then they retaliated against him in close temporal proximity after that investigative step occurred. And we believe that the board also erred in not analyzing and considering the evidence of the causal link between the two. But how would you even get... Now let's assume for a minute that, just assuming, that the board was correct, that there was no protected disclosure. What is your basis for saying, even if there is no protected disclosure, you still need to look at whether there's a causal link? Well, the judge should have considered the evidence that there was a causal link. I think it was error not to even evaluate that evidence. But answer my hypothetical for a minute. What is your basis for saying, assuming, I understand you challenge whether there was a protected disclosure, but assuming there was not and the board was correct with that, then why did the board have to go on to look at other evidence regarding a causal link? Well, Your Honor, I suppose the administrative judge was not required to engage in that analysis if she had decided there were no protected disclosures. I think it's a better course of action so that if there is a remand in this case, the evidence would have been clear here and the record would have been clear. And I think it was a failure to not even consider his evidence of the causal link and the contributing factor analysis that we think should have been done. But the underlying error there is the failure to find a protected activity. And again, although his supervisors backed off and told him to go back and, you know, look at this again, they had initially pressured him to get the search warrants. And doing so would have required him to provide a false affidavit that there was evidence that these items could be found at the suspect's home. You're telling me they asked him to provide a false affidavit? They told him to get search warrants. So let's look at page 1049 of the appendix. Do you have page 1049 of the appendix, Andy? I do not, Your Honor. You don't have the appendix? I do not. Counsel for the government, do you happen to have a copy of the appendix that you might share with? I'm trying to see the page now. There you go. 1049, this is the testimony of your client. Okay. My question is simple. This is on 1049 page, right at the top, question one. And Mr. Williams never instructed you, okay? He never instructed you to misrepresent facts to a judge, correct? Yes, but he didn't understand also that a judge needed to see. That's not my question. My question is simply, did he instruct you to misrepresent facts to a judge and you said no? No, I didn't. Now, Mr. Bassi, did he ever instruct you to misrepresent facts to a prosecutor? No. Did Mr. Bassi ever instruct you to misrepresent facts to a judge? No. So they both never instructed you to lie in an affidavit, correct? That's correct. That's his testimony. It is his testimony, Your Honor. His testimony is that he was never pressured to lie or make any false representations to a judge or a prosecutor. His testimony was that he did not receive these specific instructions. But he was told to get the search warrants without receiving... They never said, Mr. Bassantini, misrepresent facts to a, you know, the proper authority to get a search warrant. He did not receive those explicit instructions. Nonetheless, we believe the record shows that he was pressured to obtain the search warrants without explicitly being told to misrepresent in an affidavit, but obtaining the search warrants would have required him to do that. But one of these, only one of these questions talks about an affidavit, by the way. But he just says never instructed, never instructed you to misrepresent. Mr. Bassantini testified that his supervisors never told him explicitly misrepresent facts. Could he, could Mr. Bassantini receive a warrant without going to the AUSA?  Okay. But the question was... All we could do was provide evidence to the AUSA, who would then make a determination on whether to issue a warrant. But Mr. Bassantini knew that that evidence... Was that a yes? Just answer my question first. Yes. Okay, thank you. And if I may, Mr. Bassantini knew that he did not have that evidence, which is, was at the heart of his disagreement with his supervisors and his resistance... Where is the testimony in the record where he says, I knew that I didn't have this evidence even without looking at the video footage? I can't give you a citation, Your Honor. But he certainly, I can't give you a citation to the record. But certainly he testified that the evidence could not be traced to the suspect's homes. And that was the core of the issue here in terms of whether a consent search was justified or whether a search warrant at the homes was justified. Because there was no evidence, as Mr. Bassantini testified at the hearing, to establish where these stolen items could currently be found. And reviewing the surveillance footage for any extended period of time beyond how it had already been reviewed would have done nothing to establish that these items could be found at the suspect's homes. Counsel, would you like to save the remainder of your time for rebuttal? I would, thank you, Your Honor. Okay. Ms. Moses. Thank you, Ms. Moses. Good morning, Your Honors, and may it please the Court. Your Honors, we have many meritorious arguments in our brief, and we think they all merit your attention. But an utterly decisive point in this case is that in Mr. Bassantini's OSC complaint at appendix page, what's actually supplemental appendix page 26, the question is asked, when did personnel actions or threats occur? His answer, the retaliation began in December 2017 and continues to date. The first five of Mr. Bassantini's alleged protected disclosures occurred excuse me, before December 2017. Can I interrupt you for a minute? I don't think this is the basis for the Board's opinion. Am I wrong? It's not the basis for the Board's opinion. Something I wanted to point out to Your Honors. I mean, I agree with you. I noticed that myself when reviewing the record. But since we're going to just, I think we have to just focus on what the Board actually found and whether that finding is supported by substantial evidence. Yes, Your Honor. Mr. Bassantini cannot convincingly argue that he reasonably believed that his disclosures were evidence of agency wrongdoing. By his own words, the alleged mismanagement of the investigation, again, that concerns disclosures one through five, was a dispute over, quote, investigative strategy. And that can be found at appendix pages 734 and 1062. These disclosures are explicitly excluded from the definition of a protected disclosure under the statute. Disclosures concerning a supervisor's discretionary decisions challenged by subordinates are not protected under the statute. What about an issue raised, albeit late, in the amicus brief with regard to Mr. Bassantini's disclosure to the Office of Inspector General and whether it has to satisfy the requirements for a disclosure under 2302A2D? It doesn't, right? I mean, that's undisputedly what the Board did there was indisputably incorrect. It might not be properly before us because it wasn't raised on appeal, but I understand the government to totally agree with the amicus brief's reading of the statute. Am I right? We do agree, Your Honor. We agree that the wrong test was applied, that the OIG complaint would be a protected activity under the statute, and that the reasonable belief test that the Board applied is not applicable. We would agree. And as we argue in our brief, we believe that this is not grounds for reversal because Mr. Bassantini cannot show that the outcome of his appeal would have been different had the Board applied the correct standard. Oh, wait. I thought your first argument was he never made this argument and therefore it's waived and an amicus can't raise at the appellate level an argument on behalf of the client that they don't represent. Yes, Your Honor. Judge Stoll had mentioned that, so I just went right into some of our other argument pertaining to that. But yes, it is our position that not only is the amicus party cannot raise it, it's also waived by Mr. Bassantini and the third argument is that it's harmless error nonetheless. After reading the record, one is left with the impression that Mr. Bassantini is exaggerating the significance of an entirely ordinary situation. He and his supervisors disagreed about how they would pursue the baggage theft investigation and healthy discourse certainly is appropriate, especially in a law enforcement agency. Mr. Bassantini appears to have unpleasant feelings about the supervisor's disagreement about how they would approach the suspects, whether it would be through a search warrant or a consent search. But he has failed to... The consent search that he wanted to conduct, was he requesting a consent search of their properties? Yes, Your Honor. His operational plan was to arrive at the suspect's home and ask whether they would agree to let the investigators search their homes. I wouldn't let them do that even if I'd done nothing wrong. But if you've got these guys on tape rolling out the luggage, in what universe they could be like, yeah, sure, come on in, search my house. Sure. And yes, Your Honor, I agree. And even more egregiously, Mr. Bassantini's supervisors were not aware of Mr. Bassantini's position on this until the pre-briefing hours before they were intending to execute this operational plan. The suspects were on tape rolling the luggage out of baggage claim, right? Is that the case? I'm not sure exactly what the footage showed. And as the record reflects, Mr. Bassantini didn't review the surveillance footage or make the proper notations that were required in order to pass along that information to an assistant U.S. state's attorney to make a probable cause determination. Well, I thought that... I'm confused. I thought that this record included footage that suggested that these... wrongfully taken luggage from the baggage claim area. So somebody must have seen this footage or something, right? To come to that conclusion. Oh, yes, Your Honor. Yes. JetBlue Security at the LaGuardia airport had reviewed the evidence and passed it along to be reviewed and move forward with the investigation. Unless there are any further questions, we will submit a respondent's case on the brief and ask the court to affirm the board's decision. Okay. Thank you, Ms. Moses. Mr. Harrington, you have some rebuttal time. Briefly, Your Honor. Just wanted to acknowledge that clearly there was a policy disagreement here about the best course to take in the investigation. But as we have argued, we believe there was also a protected disclosure involved. And the two things are not mutually exclusive, as I mentioned earlier. And Congress made that explicit when they enacted the WP... the Enhancement Act for the WPEA several years ago in 2012. So the two things are not mutually exclusive. And we believe they both occurred here. And although there was some animosity between Mr. Bisantoni and his supervisors predating his protected disclosures regarding the search of these suspects' homes, his pushback on seeking a search warrant certainly was a contributing factor to the prohibited personnel actions that occurred after he engaged in this protected activity. And again, we believe the board should have considered his counter-revealing evidence and analyzed it in its decision. And the judge did not do so. Respectfully, unless there are any other questions, I will leave it at that. Okay, I thank both counsel. This case is taken under submission. Thank you.